___



**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| **In re:** | ) | | |
| | ) | | |
| CHARLES NATHAN BLAKE, | ) | Case No.: | 08-13780-JDW |
| | ) | | |
| Debtor. | ) | Chapter: | 7 |

___

| | | | |
|---|---|---|---|
| CUSTOM RECYCLING SERVICES, INC. | ) ) ) | | |
| Plaintiff, | ) ) | | |
| v. | ) ) | A.P. No.: | 10-01206-JDW |
| CHARLES NATHAN BLAKE, | ) ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION

This adversary proceeding comes before the Court for consideration of the *Adversary Complaint to Determine Dischargeability of Debt* (the "Complaint")(A.P. Dkt. # 1) filed by Custom Recycling Systems, Inc. (the "Plaintiff") against debtor Charles Nathan Blake (the "Defendant"). Phase one of a bifurcated trial on the adversary proceeding was held on August 7, 2014, at which time a representative of the Plaintiff, Daniel Skinner, counsel for the Plaintiff, Gary Street Goodwin, the Defendant, and counsel for the Defendant, T. K. Moffett, all appeared.

1

Arguments were heard and certain documents were received into evidence by stipulation of the parties. The Court also heard testimony from several witnesses. This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order Of Reference Dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(I) and (J).

The Plaintiff seeks a determination that debts owed to the Plaintiff by the Defendant are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and/or (a)(6). As a threshold matter, Plaintiff asserts that collateral estoppel applies and precludes further litigation on the issue of nondischargeability.[1] The Plaintiff's claim arises from a default judgment (the "District Court Judgment") entered by the United States District Court for the Northern District of Mississippi (the "District Court") against the Defendant in the amount of $149,446.35, plus interest thereon. (District Court Case No. 1:07-CV-306). If collateral estoppel applies, further hearing on the merits is unnecessary as the debts would be nondischargeable under § 523(a)(6). Hence, the trial was bifurcated to first allow presentation of evidence related to the collateral estoppel issue, and the Court restricted the parties' initial presentation of evidence to that issue.[2] For the reasons set forth below, the Court finds that collateral estoppel does apply, and the Plaintiff is entitled to a judgment of nondischargeability under 11 U.S.C. § 523(a)(6).

---

[1] If collateral estoppel applies, it applies to the "willful and malicious" discharge exception under § 523(a)(6). The Fifth Circuit has held that § 523(a)(6) encompasses the conversion of property by the debtor. *Friendly Finance Service Mid–City, Inc. v. Modicue (In re Modicue),* 926 F.2d 452, 453 (5th Cir.1991). *See also Burns v. Burns (In re Burns)*, 276 B.R. 441, 443 (Bankr. N.D. Miss. 2000) ("willful and malicious 'injury' includes a willful and malicious 'conversion.'").

[2] By tacit agreement of the parties, however, some evidence was admitted on the merits of the nondischargeability claim. Still, the parties expressly confirmed their understanding that the Court was to handle the question of applicability of collateral estoppel first.

## I.  **FINDINGS OF FACT**[3]

Prior to the litigation, the parties had a business relationship where Defendant performed repairs and service on several pieces of machinery and equipment owned by the Plaintiff. Sometime prior to or around 2007, the business relationship between the parties deteriorated and was eventually terminated. The Plaintiff contends that near the end of the business relationship, Defendant converted five items of equipment belonging to the Plaintiff.[4] The Defendant denies the Plaintiff's allegations and asserts that to the extent he retained any of Plaintiff's property, it was essentially a setoff due to Plaintiff's wrongful refusal to pay him for services rendered.

On November 29, 2007, Plaintiff filed suit against Defendant and Blake Equipment Sales, LLC ("BES") in the District Court alleging conversion of Plaintiff's property (the "District Court Case"). Defendant retained counsel who remained as counsel of record for the duration of the District Court Case.

Defendant filed a *Rule 12(b) Motion to Dismiss* (the "Motion to Dismiss")(Ex. P-1C) on February 28, 2008, alleging that the District Court lacked subject matter jurisdiction to hear the suit.[5] Defendant also filed a brief in support of the Motion to Dismiss. (Ex. P-1D). Plaintiff filed a *Response to Defendants' Rule 12(b) Motion to Dismiss* (Ex. P-1H) on April 9, 2008. The District Court entered an order denying the Motion to Dismiss on June 7, 2008. (Ex. P-1I). Thereafter, on July 22, 2008, Defendant filed *Motion for Time to Respond to Complaint* (Ex. P-

---

[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

[4] One of the items of equipment was ultimately recovered during the pendency of litigation between the parties and was not included in the District Court Judgment, nor is the item at issue here.

[5] Documents from the District Court Case were admitted into evidence at the trial of this adversary proceeding by stipulation. The trial exhibits will be referenced and cited to by the exhibit numbers given to them at trial, as opposed to the docket numbers assigned to them in District Court. Citations to the docket in the main bankruptcy case will be to "Bankr. Dkt. #____" and citations to the bankruptcy adversary proceeding will be to "A.P. Dkt. #____".

1J), which was granted by the District Court on July 25, 2008 (Ex. P-1K). Pursuant to that order, the Defendant was given until August 14, 2008 to respond to the Plaintiff's Complaint (the "District Court Complaint"). The Defendant filed no further response to the Complaint.

On September 18, 2008, during the pendency of the District Court Case, the Defendant filed a voluntary petition for relief pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court. (Bankr. Dkt. # 1).[6] On September 22, 2008, the Defendant filed a *Motion to Stay Proceedings* in the District Court Case (Ex. P-1L), asserting that pursuant to § 362, any further proceedings in the District Court Case were stayed pending the outcome of the Defendant's bankruptcy case. The Motion to Stay Proceedings was granted by order of the District Court on September 26, 2008 (Ex. P-1Q).

Around that same time, on September 23, 2008, counsel for the Defendant filed a *Motion to Withdraw as Counsel* for BES (but not Defendant). (Ex. P-1M). On September 25, 2008, the District Court entered an order denying the Motion to Withdraw as Counsel. The District Court made explicitly clear in its order that it would only allow counsel to withdraw in three circumstances: (1) when the rules of professional responsibility make it untenable for the attorney to continue; (2) when substitute counsel has been obtained by a party; and (3) when a party make clear an unequivocal and intelligent decision to proceed *pro se*. The Court found that none of the three circumstances applied, and that accordingly the Motion to Withdraw was not well-taken, and counsel was not excused from representing BES. (Ex. P-1P).

In March 2009, Plaintiff filed a *Motion to Lift Automatic Stay* (the "Motion to Lift Stay")(Bankr. Dkt. # 42) and a *Motion for Extension of Deadline for Filing of Complaint to Determine Dischargeability* (the "Motion for Extension")(Bankr. Dkt. # 47) in the Defendant's

---

[6] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

4

bankruptcy case. The Motion to Lift Stay asserted that the result in the District Court Case could resolve the dischargeability issue in this Court. Accordingly, Plaintiff requested that the automatic stay be lifted for the purpose of proceeding with the District Court Case to reduce that action to judgment. (Bankr. Dkt. # 42). Similarly, the Motion for Extension requested that if the Motion to Lift were granted, that the Plaintiff also be given until thirty days after any District Court judgment became non-appealable to file a complaint to determine dischargeability of certain debts in this Court. (Bankr. Dkt. # 47).[7] Both the Motion to Lift Stay and the Motion for Extension were granted by order of this Court on June 18, 2009 (Bankr. Dkt. # 114).

The automatic stay having been lifted by this Court, the parties proceeded with the District Court Case. (Ex. P-1S). Defendant failed to file an answer to the District Court Complaint. Evidence submitted to this Court without objection establishes that the Defendant, at all times, received proper service and notice of all motions filed and orders entered in the District Court Case. (Ex. P-1Z). Again, Defendant also had counsel of record throughout the District Court Case.

On April 5, 2010, Plaintiff filed an *Application to Clerk for Entry of Default and Supporting Affidavit* (Ex. P-1T) in the District Court Case, requesting that, in accordance with Rule 55(a) of the Federal Rules of Civil Procedure, an entry of default be entered against the Defendant for his failure to answer or otherwise defend the District Court Complaint. A clerk's default was thereafter entered. (Ex. P-1U). On April 6, 2010, Plaintiff also filed an *Application to Court for Default Judgment and for Hearing* (Ex. P-1V), requesting a default judgment against the Defendant. The Plaintiff requested that the District Court conduct an evidentiary hearing to determine damages and any other matter that the District Court may need to

---

[7] This adversary proceeding was filed within thirty (30) days of the date that the District Court Judgment became final and non-appealable.

5

determine. The District Court granted the Application, but ordered the Plaintiff to file affidavits and other supporting evidence in lieu of a hearing. (Ex. P-1W). The District Court indicated that it would hold a hearing if there were substantial issues remaining following its review of the evidentiary submission. (Id.)

On August 27, 2010, the Plaintiff filed a *Motion for Determination of Damages and for Entry of Default Judgment Awarding Damages* (the "Motion for Default")(Ex. P-1X), which included the affidavit of Daniel Skinner, president of the Plaintiff (Ex. P-1X, "A"), a copy of the Defendant's deposition taken April 13, 2010 (Ex. P-1X, "B"), various documents relating to the purchase and sale of the equipment in question (Ex. P-1X, "Collective C"), the attorney's fee affidavit of Mr. Goodwin (Ex. P-1X, "D"), and a deposition transcript of Justin Hastings, vice president of the Plaintiff (Ex. P-1X, "E").

On September 24, 2010, the District Court entered the District Court Judgment. (Ex. P-1Y). In the District Court Judgment, the court specifically stated that its decision was made after consideration of the affidavits and documentary exhibits. The Court explained that its findings were based on evidence showing that the Defendant had wrongfully come into possession of, or wrongfully detained, equipment belonging to the Plaintiff. Although one of the five items of equipment in question was returned to the Plaintiff during the pendency of the litigation, the District Court found that the remaining four items "were converted by the defendants *in a malicious and willful manner*, due to the defendant's own financial condition." (Ex. P-1Y)(emphasis added). The District Court further found that the Defendant had converted $26,000.00 in equipment sale proceeds belonging to the Plaintiff. Accordingly, the District Court ordered that Plaintiff recover judgment from Defendant in the total amount of $149,446.35. Of that amount, the District Court awarded $133,200.00 in compensatory damages

6

and $16,246.35 in punitive damages.[8] Lastly, it was ordered that interest was to accrue on the judgment amount at a rate of 0.26 percent *per annum* from and after the date the Default Judgment was entered. The Plaintiff then returned to this Court to seek determination of the dischargeability of the District Court Judgment.

## II. CONCLUSIONS OF LAW

The doctrine of collateral estoppel[9] dictates that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. U. S.*, 440 U.S. 147, 153, 99 S. Ct. 970, 973, 59 L. Ed. 2d 210 (1979). *See also Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48-49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897) ("a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . ."). As similarly stated by the Fifth Circuit Court of Appeals, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *RecoverEdge, L.P. v. Pentecost,* 44 F.3d 1284, 1290 (5th Cir.1995) (quoting *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)). Collateral estoppel has the effect of "establishing conclusively questions of law or fact that have received a final judgment for the purposes of a later lawsuit." *Walker v. Kerr-McGee Chem. Corp.*, 793 F. Supp. 688, 694 (N.D. Miss. 1992). Collateral estoppel principles apply in

---

[8] The punitive damages assessed were exactly the amount of attorney's fees claimed by the Plaintiff. This figure was supported by the affidavit of Mr. Goodwin. (Ex. P-1X, "D").

[9] The doctrine of collateral estoppel is also known as "issue preclusion," and the terms are frequently used interchangeably (as compared to the related doctrine of res judicata, which is also known as "claim preclusion"). *Matter of Gober*, 100 F.3d 1195, 1200 (5th Cir. 1996).

nondischargeability proceedings under the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S. Ct. 654, 658, 112 L. Ed. 2d 755 (1991).

In determining whether a federal court judgment has preclusive effect, the federal standard applies.[10] *Kerr-McGee*, 793 F. Supp. at 697. Under the federal standard, there are three elements that must all be satisfied for collateral estoppel to apply:[11]

(1) that the issue at stake be identical to one involved in the prior litigation;

(2) that the issue have been actually litigated in the prior litigation; and

(3) that the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that earlier action.

*See, e.g., Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 548 (5th Cir. 2013); *Kerr-McGee*, 793 F.Supp. at 694; *Salisbury v. Salisbury (In re Salisbury)*, 331 B.R. 682, 685-86 (Bankr. N.D. Miss. 2005). All three elements are satisfied in this case.

**A. Identical Issues**

Plaintiff's claims in both this Court and the District Court are largely the same – the Defendant converted Plaintiff's property and thereby caused injury to the Plaintiff. Upon review of the Motion for Default and the evidence submitted therewith, the District Court found that the Plaintiff had converted four pieces of equipment owned by the Plaintiff, as well as $26,000.00 of equipment sale proceeds also belonging to the Plaintiff.

---

[10] In deciding whether a state court judgment has preclusive effect, the standards of the forum state apply. *Canton v. Trudeau (In re Canton)*, 157 F.3d 1026, 1028 (5th Cir. 1998).

[11] Some Fifth Circuit cases discussing the applicability of collateral estoppel recognize a fourth factor to be applied: whether there are any special circumstances that make it unfair to apply the doctrine. However, these equitable considerations only apply to situations involving "offensive collateral estoppel." *Bradberry*, 732 F.3d at 548. *See also Swate v. Hartwell (In re Swate)*, 99 F.3d 1282, 1290 (5th Cir. 1996) (noting that some Fifth Circuit cases suggest the equitable fourth factor applied to all collateral estoppel questions). As explained by the United States Supreme Court, "offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with *another* party." *Parklane Hoisery Co. v. Shore*, 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)(emphasis added). As the parties in the case before this Court are identical, the issue of "offensive collateral estoppel" does not apply and the Court instead applies the three-factor test.

The tort of conversion involves "a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Stevens v. Smith*, 71 So.3d 1230, 1233 (Miss. Ct. App. 2011) (citing *Cmty. Bank, Ellisville, Miss. v. Courtney,* 884 So.2d 767, 772–73 (¶ 10) (Miss.2004)(quoting *Smith v. Franklin Custodian Funds, Inc.,* 726 So.2d 144, 149 (¶ 20) (Miss.1998))). There is a conversion only when there is "intent to exercise dominion or control over goods which is inconsistent with the true owner's right." *First Investors Corp. v. Rayner*, 738 So.2d 228, 234 (Miss. 1999). The intent required does not have to be that of a wrongdoer. *Id*. That is to say, one may be liable for the tort of conversion even if acting under a good-faith mistake of fact or law. *Walker v. Brown*, 501 So.2d 358, 361 (Miss. 1987). *See also Masonite Corp. v. Williamson,* 404 So.2d 565, 567-68 (Miss.1981) ("[N]either a mistake of fact on the part of [the defendant] ... nor [his] good faith ... is a defense to this action of conversion.")

Although the act of conversion can be "intentional" or "unintentional" (for lack of a better term), the Plaintiff has always alleged both before this Court and the District Court that the Defendant's actions were intentional. Because the District Court specifically found, based on the evidence before it, that the Defendant's acts of conversion were "willful and malicious," this Court finds that the issue litigated in the District Court is identical to the issue before this Court.

It also bears noting that the Defendant's bankruptcy case had already been filed by the time the District Court Judgment was entered. The Order Lifting Stay entered by this Court specifically provided that the facts alleged in the District Court litigation, if proven in that court, could constitute an exception to discharge in this Court. The District Court and all parties were aware of the District Court Case's connection to the bankruptcy case, and the District Court

9

specifically found that the Defendant's actions were willful and malicious, not simply that conversion had occurred.

This Court is not left to compare the factors of "willful and malicious" with the specific intent to commit conversion – the District Court already specifically found that the items were converted in a willful and malicious manner. The District Court's use of such precise language with regard to intent leads this Court to the conclusion that the District Court knew that it was an important consideration in the bankruptcy case.

### B. Issue Actually Litigated in Prior Action

Although the District Court Case resulted in a default judgment, the doctrine of collateral estoppel may still apply. "The failure of a defendant to attend the trial does not prevent issue preclusion in a subsequent action, so long as the prior action was actually litigated in the defendant's absence." *In re Evans*, 252 B.R. 366, 369 (Bankr. N.D. Miss. 2000). In *Pancake v. Reliance Insurance Co. (In re Pancake)*, 106 F.3d 1242 (5th Cir. 1997), the Fifth Circuit explained that

> [f]or purposes of collateral estoppel...the critical inquiry is not directed at the nature of the default judgment, but, rather, one must focus on whether an issue was fully and fairly litigated. Thus, even though [Defendant's] answer was struck, if [Plaintiff] can produce record evidence that the state court conducted a hearing in which [Plaintiff] was put to its evidentiary burden, collateral estoppel may be found to be appropriate.

*Id*. at 1244-45.

Hence, *Pancake* mandates that the analysis to be undertaken by this Court is whether the District Court record supports a finding by this Court that the issue was fully and fairly litigated in the District Court.[12]  *Id*.  The District Court record in this case was fully developed and leads

---

[12] This Court obviously does not act as an appellate court to the District Court (in fact, the opposite is true). This Court is not to re-weigh or reconsider the District Court Case evidence. If the Defendant contends that there was any error in the District Court Judgment, that issue could only have been raised in an appeal of the District Court

this Court to the conclusion that the issue was fully and fairly litigated. While the District Court declined to hold a hearing, the District Court Judgment was based on an evidentiary record. In the District Court Judgment, the Court explicitly stated that its decision was made upon consideration of the affidavits and other documentary evidence. (Ex. P-1Y). Such evidence and documentation was requested and relied upon by the District Court prior to entry of the District Court Judgment. The District Court explained that its findings were based on evidence showing that the Defendant had wrongfully come into possession of, or wrongfully detained, equipment belonging to the Plaintiff. The District Court Judgment was not based merely on allegations contained in the pleadings, nor was it based merely on the Defendant's failure to respond.

At trial before this Court, the parties stipulated to the admission of extensive evidence relied upon by the District Court. (Ex. P-1). By submitting these documents into evidence at trial before this Court, the Plaintiff has satisfied the burden set forth by the Fifth Circuit in *Pancake*. *See Nunley v. Nunley (In re Nunley)*, 237 B.R. 907 (Bankr. N.D. Miss. 1999) (collateral estoppel applied in a dischargeability action to a federal District Court default judgment when based on an evidentiary record). Although the District Court Judgment was a default judgment, that judgment was entered only after consideration of an evidentiary record. The Defendant had notice of all hearings and filings leading up to the District Court Judgment, and actually participated in the District Court Case for some time.

### C. Issue in the Prior Litigation was Critical and Necessary

It is true that in Mississippi the act of conversion does not always require a tortfeasor to act willfully and maliciously. As stated above, conversion has been committed when there is "intent to exercise dominion or control over goods which is inconsistent with the true owner's

---

Judgment. No appeal was taken, and the District Court Judgment is now final and non-appealable. Therefore, the Defendant's new arguments and evidence that the District Court Judgment is incorrect are of no moment.

right." *Rayner*, 738 So.2d at 234. The intent required does not have to be that of a wrongdoer. *Id*. However, § 523(a)(6) requires a creditor to show an injury to person or property by the debtor was both willful and malicious.

The District Court could have found that the Defendant intended to exercise control over the equipment owned by the Plaintiff (and therefore inconsistent with the Plaintiff's ownership rights of use and possession), but did not intend to cause injury. However, in the matter before this Court, and the District Court, the Plaintiff's allegation has always been that the Defendant intended to act willfully and maliciously. Because the Plaintiff chose not to travel under the negligence theory, but always and only the specific intent theory, it was critical and necessary that the District Court find that the intent existed in entering the District Court Judgment.

In determining whether or not a debt arises from "willful and malicious injury," the United States Supreme Court has held that subsection (a)(6) applies to "acts done with the actual intent to cause injury," and does not except from discharge debts arising only from negligently or recklessly inflicted injuries. *Kawaauhau v. Geiger*, 523 U.S. 57, 59, 118 S.Ct. 974, 975-76, 140 L.Ed.2d 90 (1998). Following the Supreme Court's analysis in *Kawaauhau*, the Fifth Circuit has held that "[a]pplying the Supreme Court's pronouncement… for a debt to be nondischargeable, a debtor must have acted with 'objective substantial certainty or subjective motive' to inflict injury." *In re Williams*, 337 F.3d 504, 508 (5th Cir. 2003) (citing *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998)). Furthermore, "Kawaauhau held that a willful injury, in this context, is a '*deliberate or intentional injury,* not merely a *deliberate or intentional act* that leads to injury.'" *In re Shcolnik*, 670 F.3d 624, 629 (5th Cir. 2012)(emphasis original). In analyzing this standard, the Fifth Circuit has stressed that the requisite intent may be found

where the Defendant acted with "objective substantial certainty or subjective motive" to inflict injury. *Williams*, 337 F.3d at 508 (citing *Miller*, 156 F.3d at 603).

In the dispute between these two parties, not only was there objective substantial certainty that the Defendant's actions would cause injury when Plaintiff's property was converted, but Defendant admitted it was his intent to cause the injury. In the deposition of the Defendant, submitted to the District Court as part of the evidentiary basis for the Motion for Default, Defendant explained that money was owed to him by the Plaintiff for work done on the Plaintiff's equipment and for other work done for the Plaintiff. (Ex. P-1X, "B"). Defendant maintained that he kept Plaintiff's equipment in response to Plaintiff's failure to pay him for work done. The equipment was likewise sold by the Defendant to satisfy the debts allegedly owed to him by the Plaintiff.

The facts, allegations, pleadings and evidence have always been exclusively concerned with willful and malicious intent. The Plaintiff has never alleged otherwise and gave the District Court no evidence that the conversion was unintentional. The parties and the District Court were aware that the District Court Case would be a precursor to a nondischargeability suit in this Court. Accordingly, the District Court specifically requested evidentiary submissions before rendering the Default Judgment, and then in that Default Judgment specifically chose to include the willful and malicious finding. As such, this Court finds that for purposes of collateral estoppel analysis, the determination of the issue of intent in the prior litigation was a critical and necessary part of the judgment in that earlier action.

### III.  CONCLUSION

Based on the review of the evidence considered by the District Court in rendering the District Court Judgment, and considering the requirements for application of the doctrine of

collateral estoppel, the Court finds that collateral estoppel applies. The doctrine provides that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. U. S.*, 440 U.S. at 153. Following the guidelines established by the Fifth Circuit in *Bradberry* and *Pancake*, the Court finds that (1) the issue at stake in this Court (the Defendant's willful and malicious conversion of Plaintiff's property) is identical to that involved in the prior District Court case, (2) that despite culminating in a default judgment, the issue was fully and litigated in the prior action wherein the Plaintiff met its evidentiary burden, and (3) that the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that earlier action. *Bradberry*, 732 F.3d at 548; *In re Pancake*, 106 F.3d at 1245. As such, the parties are precluded from further litigation on the issue of nondischargeability as it relates to § 523(a)(6) and no further evidentiary presentation with regard to the underlying merits is necessary. Accordingly, it is hereby

**ORDERED, ADJUDGED** and **DECREED** that the District Court Judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The Court will enter a Final Judgment consistent with this Memorandum Opinion.

##END OF MEMORANDUM OPINION##