IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHARLES NATHAN BLAKE                                                    APPELLANT

v.                                                        CIVIL ACTION NO. 1:15-cv-00055-GHD

CUSTOM RECYCLING SERVICES, INC.                                        APPELLEE


## MEMORANDUM OPINION

Presently before the Court is Appellant Charles Nathan Blake's appeal to reverse the United States Bankruptcy Court for the Northern District of Mississippi's memorandum opinion [2] and final judgment [3] issued on August 25, 2014. Appellee Custom Recycling Services, Inc. responded with its brief [30] to affirm the opinion and final judgment, and Appellant Charles Nathan Blake submitted a reply brief [34]. The Court held oral argument on October 9, 2015. Upon due consideration of this well briefed and argued appeal, this Court finds that the memorandum opinion and final judgment of the United States Bankruptcy Court for the Northern District of Mississippi should be affirmed in all respects.

*A. Procedural Background*

On November 29, 2007, Plaintiff-Appellee Custom Recycling Services, Inc. ("Appellee") filed a diversity action against Defendant-Appellant Charles Nathan Blake ("Appellant") and Defendant Blake Equipment Sales, LLC (collectively, "Blake") in the United States District Court for the Northern District of Mississippi (the "District Court") in a case styled *Custom Recycling Services, Inc. v. Charles Nathan Blake et al.*, No. 1:07-cv-00306-MPH-JAD, wherein Appellee alleged that Blake had converted certain equipment and funds from its business. *See* Dist. Ct. Compl. [31] at 34–41. Blake moved for extra time to file an answer to the complaint, but never filed an answer. While the District Court case was pending, Appellant filed a

1

voluntary petition for relief pursuant to Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Mississippi (the "Bankruptcy Court") in case No. 08-13780-JDW. Shortly thereafter, Blake filed a motion to stay further proceedings in the District Court case pending the outcome of the Bankruptcy Court case which was granted by the District Court. Appellee then filed a motion for relief from the stay in Bankruptcy Court; the motion stated Appellee's desire to proceed in the District Court case and allow that court to resolve the issue of whether the debt was dischargeable. The Bankruptcy Court entered an order lifting the stay, allowing the District Court case to resume, and stating that the District Court complaint alleged actions in the nature of theft, conversion, larceny, or willful and malicious injury—any of which if proven could constitute an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (4), and (6). Appellee subsequently filed a motion for default judgment in the District Court case. On September 24, 2010, the District Court entered default judgment against Blake.

Thereafter, Appellee filed a complaint in Bankruptcy Court, asserting that the debt owed by Blake was nondischargeable pursuant to 11 U.S.C. § 523(A)(4) (fraud, defalcation, embezzlement, or larceny) and (6) (willful and malicious injury). Appellee additionally asserted that the doctrine of collateral estoppel precluded the religitation in Bankruptcy Court of these issues. On August 7, 2014, the Bankruptcy Court conducted phase one of a bifurcated trial to determine whether collateral estoppel applied to the case. The Bankruptcy Court found that collateral estoppel applied and precluded further litigation on the issue due to the willful and malicious discharge exception found in 11 U.S.C. § 523(a)(6).

On September 8, 2014, Appellant filed his notice of appeal [1] to this Court from the Bankruptcy Court's memorandum opinion [2] and final judgment [3] dated August 25, 2014.

The parties subsequently filed briefs and presented their arguments before the Court in an oral argument held on October 9, 2015.

## B. Standard of Review

A party who is dissatisfied with a bankruptcy court's final decision can appeal to the district court for the judicial district in which the bankruptcy judge is serving under 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments of adjunct bankruptcy courts. In an appeal of a core proceeding in Bankruptcy Court, such as this one, this Court reviews the Bankruptcy Court's factual findings for clear error and conclusions of law de novo. *See In re Croft*, 737 F.3d 372, 374 (5th Cir. 2013).

## C. Analysis and Discussion

On appeal, Appellant argues that the Bankruptcy Court erred in finding that collateral estoppel applied, precluded further hearing on the merits in the discharge proceedings, and determined that the debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(6), which provides that "[a] discharge [in bankruptcy] . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." *See* 11 U.S.C. § 523(a)(6). Appellant specifically argues to this Court as follows: (1) the Bankruptcy Court failed to correctly apply the federal preclusion standard to the District Court judgment, because the discharge issue was not actually litigated or fully and fairly litigated in that court; (2) the issues in both cases were not identical, because intent to injure was never pleaded, litigated, or necessary to the District Court action; and (3) the Bankruptcy Court abdicated its duty by allowing the District Court to effectively decide the dischargeability issue. The Court examines Appellant's arguments in the context of the doctrine of collateral estoppel.

Appellant first contends that the Bankruptcy Court inappropriately relied on *Pancake v. Reliance Insurance Co. (In re Pancake)*, 106 F.3d 1242 (5th Cir. 1997), a bankruptcy case that found collateral estoppel applied to a <u>state</u> court default judgment, when the Bankruptcy Court should have instead applied the <u>federal</u> standard of collateral estoppel. Appellant further maintains that he did not have a full and fair opportunity to litigate the issue in the District Court action, specifically, that, using the language of an Eleventh Circuit Court of Appeals case, Appellant did not "have . . . a fair opportunity procedurally, substantively[,] and evidentially to contest the issue." *See In re Bush*, 62 F.3d 1319, 1323 (11th Cir. 1995). Appellant argues that he consistently maintained in Bankruptcy Court that he could not afford counsel in the District Court proceeding and had no idea how to defend the District Court suit. Finally, Appellant maintains that the Bankruptcy Court improperly gave preclusive effect to the default judgment based the Appellee's evidentiary submission.

Appellee's position is that Appellant had the opportunity to participate in the District Court proceeding, but did not do so, specifically, that Appellant did not show a colorable defense, file an answer, or attempt to have the default judgment set aside. Appellee further maintains that Appellant was served a summons, as well as notices of all hearings and filings, leading up to the judgment. Thus, Appellee maintains that the issue was actually litigated in the District Court, and consequently, that the Bankruptcy Court's finding is not clearly erroneous.

A bankruptcy court's decision to give preclusive effect to a district court judgment is a question of law that this Court reviews de novo. *See Caton v. Trudeau (In re Caton)*, 157 F.3d 1026, 1029 (5th Cir. 1998), *as amended on reh'g* (Nov. 3, 1998). Collateral estoppel, otherwise known as issue preclusion, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue

recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' [collateral estoppel] protects against 'the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Id.*, 128 S. Ct. 2161 (quoting *Montana v. United States*, 440 U.S. 147, 153–54, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979)).

Because the default judgment against Appellant arose from a federal court, federal principles of collateral estoppel control. *See Taylor*, 553 U.S. at 891, 128 S. Ct. 2161 ("The preclusive effect of a federal-court judgment is determined by federal common law."). *See generally* R. Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1473 (4th ed. 1996); Degnan, Federalized Res Judicata, 85 Yale L.J. 741 (1976). The United States Supreme Court has explained the complicated nature of federal collateral estoppel:

> Neither the Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, nor the full faith and credit statute, 28 U.S.C. § 1738, addresses the question. By their terms they govern the effects to be given only to state-court judgments (and, in the case of the statute, to judgments by courts of territories and possessions). And no other federal textual provision, neither of the Constitution nor of any statute, addresses the claim-preclusive effect of a judgment in a federal diversity action.
>
> . . .
>
> Nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or a federal court. This is, it seems to us, a classic case for adopting, as the

federally prescribed rule of decision, the law that would be applied
by state courts in the State in which the federal diversity court sits.

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506–07, 508, 121 S. Ct. 1021, 149 L.

Ed. 2d 32 (2001) (quotation marks omitted).

However, whether this Court applies Mississippi law or federal law on collateral

estoppel, the legal standard, analysis, and result are the same. Under federal law, collateral

estoppel is appropriate if " '(1) the issue at stake is identical to the one involved in the earlier

action; (2) the issue was actually litigated in the prior action; and (3) the determination of the

issue in the prior action was a necessary part of the judgment in that action.' " *Crook v. Galaviz*,

No. 15-50244, 2015 WL 5534162, at *5 (5th Cir. Sept. 21, 2015) (per curiam) (quoting *Test*

*Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 428 F.3d 559, 572 (5th Cir. 2005)).

Under Mississippi law, "the parties to an action will be precluded from relitigating a specific

issue, which was: (1) actually litigated in the former action; (2) determined by the former action;

and (3) essential to the judgment in the former action." *In re Estate of Stutts v. Stutts*, 529 So. 2d

177, 179 (Miss. 1988) (citing *Dunaway v. W.H. Hopper & Assocs.*, 422 So. 2d 749, 751 (Miss.

1982)). Thus, there is no substantive difference between Mississippi law on collateral estoppel

and federal law on collateral estoppel.

Collateral estoppel principles apply in bankruptcy discharge exception proceedings

pursuant to 11 U.S.C. § 523(a). *In re Montgomery*, 200 F. App'x 320, 322 (5th Cir. 2006) (citing

*Grogan v. Garner*, 498 U.S. 279, 285, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)). The United

States Supreme Court has stated: "If, in the course of adjudicating a state law question, a . . .

court should determine factual issues using standards identical to those of [11 U.S.C. § 523],

then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation

of those issues in the bankruptcy court." *Brown v. Felsen*, 442 U.S. 127, 139 n.10, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979).

Whether considered under federal law or Mississippi law, "the doctrine [of collateral estoppel] applies to a default judgment." *See In re Montgomery*, 200 F. App'x at 322 (citing *Morris v. Jones*, 329 U.S. 545, 550–51, 67 S. Ct. 451, 91 L. Ed. 488 (1947) ("A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default."); *Moyer v. Mathas*, 458 F.2d 431, 434 (5th Cir. 1972)); *Strain v. Gayden*, 20 So. 2d 697, 700 (Miss. 1945) ("It is true that the judgment here complained of was by default, but it is also true that a judgment by default, where personal jurisdiction of a defendant has been obtained, is as conclusive either as an estoppel or bar as a judgment in a contested case. A judgment by default is attended by the same legal consequences as if there had been a verdict for the plaintiff."). "For purposes of collateral estoppel, . . . the critical inquiry is not directed at the nature of the default judgment but, rather, one must focus on whether an issue was fully and fairly litigated." *Pancake*, 106 F.3d at 1244–1255.

However, despite these principles, the Fifth Circuit has stated that a bankruptcy court is not bound by the earlier determination of the trial court and retains exclusive jurisdiction to determine the ultimate dischargeability of a debt. *In re Shuler*, 722 F.2d 1253, 1255 (5th Cir. 1984).

In the context of a default judgment, once the defendant has filed an answer, the plaintiff cannot obtain a simple default judgment and must satisfy his burden of proof on the elements of the action with evidence. In that situation, the Fifth Circuit has held that collateral estoppel gave preclusive effect to a prior state court judgment even though the defendant did not actually

7

appear at the trial. *See Garner v. Lehrer (In re Garner)*, 56 F.3d 677 (5th Cir. 1995). Further, in *Pancake*, the Fifth Circuit approved the use of collateral estoppel in a bankruptcy dischargeability action arising from a case in which the state court struck the answer of the defendant for discovery abuses and entered judgment for $455,703.31 at a trial at which the defendant failed to appear. Under those circumstances, the Fifth Circuit stated that, notwithstanding the defendant's absence, "where the court enters a default judgment after conducting a hearing or trial at which the plaintiff meets [its] evidentiary burden, the issues raised therein are considered fully and fairly litigated for collateral estoppel purposes." 106 F.3d at 1244. Although both *Garner* and *Pancake* involved the application of Texas law on collateral estoppel as opposed to federal or Mississippi law, the point as to when an issue is "actually litigated" is the same. *See Cornwell v. Loesch (In re Cornwell)*, 109 F. App'x 682, 684 (5th Cir. 2004).

Although in this appeal Appellant maintains that he could not afford to continue defending the District Court suit and asks this Court to consider that in the determination of whether he participated in the proceeding, this Court finds that argument unavailing. Unlike a default judgment wherein the defendant chooses not to litigate issues at all for reasons that have nothing to do with the merits of the case, such as finding from the start that the expense of contesting the lawsuit is not justified, *see Gober v. Terra+Corp. (In re Gober)*, 100 F.3d 1195, 1205 (5th Cir. 1996), Blake participated in the District Court case. First, Blake was served with the District Court summons and complaint. Subsequently, Blake filed a motion for extension of time to file an answer to the complaint, which the District Court granted. Blake then filed a motion to dismiss and accompanying memorandum brief, contending the complaint should be dismissed on jurisdictional grounds. The District Court denied the motion. Next, Blake filed a

motion for extension of time to file an answer to the complaint, which the District Court granted.

Subsequently, Appellant filed a petition for Chapter 7 bankruptcy in Bankruptcy Court and requested a stay of the District Court proceedings; the District Court granted this request. Blake's counsel then filed a motion to withdraw from representation in the District Court case, which the District Court denied. At this point, Blake ceased participating in the District Court case, but his counsel continued to receive notices of all documents filed in the District Court case.

Next, Appellee filed a motion to lift stay which the District Court granted. Then, Appellee sought a default judgment against Blake, who had never filed an answer to the District Court complaint. *See* Dist. Ct. Mot. Def. J. [31] at 43–47. The District Court granted the motion and ordered Appellee to file affidavits and other supporting evidence in lieu of a hearing on damages. The District Court indicated that it would hold a hearing if substantial issues remained following its review of the evidentiary submission. As stated above, Blake's counsel received notice of all documents filed in the case. However, Blake never filed a response to the motion for default judgment.

On September 24, 2010, the District Court entered default judgment, ruling as follows: "The evidence submitted shows that [Blake] had wrongfully come into possession of, or wrongfully detained[,] five pieces of equipment belonging to [Appellee]," one piece of which was ultimately recovered, but four pieces of which "were converted by [Blake] in a malicious and willful manner, due to [Blake's] own financial condition. [Blake] also converted $26,000.00 of equipment sales proceeds belonging to [Appellee]." Dist. Ct.'s J. [31] at 48–49. The District Court awarded judgment against Blake "jointly and severally, for this conversion," specifically,

"compensatory damages in the sum of $133,200.00 and punitive damages in the amount of [Blake's] attorney's fees of $16,246.35 for a total judgment in the amount of $149,446.35" with "[i]nterest [to] accrue . . . at the rate of 0.26 percent *per annum* from and after the date of entry." *Id.* at 49.

In the opinion of this Court, pursuant to Fifth Circuit case law and the status of the law in Mississippi, the Bankruptcy Court properly gave the default judgment entered by the District Court against Appellant preclusive effect, because the issue of dischargeability was fully and fairly litigated. As the Bankruptcy Court further noted, the default judgment was uncontested by Blake in District Court and was never appealed by Blake to the Fifth Circuit. The validity of the default judgment is not before this Court. Blake had the chance to attack the default judgment properly to the Fifth Circuit Court of Appeals and did not do so. In addition, as shown below, the issue was identical in both the Bankruptcy Court and District Court, and the District Court's determination of the issue was necessary to the judgment.

Having determined that the Bankruptcy Court correctly applied collateral estoppel to the District Court default judgment, this Court now turns to Appellant's remaining arguments. Appellant argues that the Bankruptcy Court improperly delegated its exclusive jurisdiction over dischargeability to the District Court when the ultimate dischargeability intent to injure was never before the District Court. Interrlated to this argument is the Appellant's argument that the issues in the Bankruptcy Court case and District Court case were not identical because intent to injure was never pleaded, litigated, or necessary to the District Court action. Appellee responds that the District Court found that the conversion was intentional and that this finding was based on the District Court complaint, which asserted a theory of intentional conversion, as well as the evidentiary submission of Appellee.

The Court finds that Appellee's arguments are well taken. The Bankruptcy Court properly concluded that collateral estoppel barred relitigation of issues relevant to dischargeability, specifically, that Appellant's conduct ranked as "willful and malicious" under the statutory exception and rendered the debt to Appellee nondischargeable. "[P]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability[, and] collateral estoppel can provide an alternate basis to satisfy the elements of [11 U.S.C.] § 523(a)(6)." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks and alterations omitted). The United States Supreme Court has explained:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, . . . the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964) (emphasis added).

*Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998). Under Mississippi law, "[c]onversion . . . is an intentional tort that does not require proof of fraud, malice, libel, slander, or defamation." *See, e.g.*, *Zumwalt v. Jones Cnty. Bd. of Supervisors*, 19 So. 3d 672, 688–89 (Miss. 2009). However, according to the United States Supreme Court, "not every tort judgment for conversion is exempt from discharge," because "[n]egligent or reckless acts . . . do not suffice to establish that a resulting injury is 'wil[l]ful and malicious.' " *Kawaauhau*, 523 U.S. at 63–64, 118 S. Ct. 974 (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S. Ct. 151, 79 L. Ed. 393 (1934)). In *Davis*, which is cited by Appellant in support

of his argument of dischargeability, the United States Supreme Court explained: "There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice." 293 U.S. at 332, 55 S. Ct. 151. But "[t]here is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception." *Id.*, 55 S. Ct. 151; *see McIntyre v. Kavanaugh*, 242 U.S. 138, 141, 37 S. Ct. 38, 61 L. Ed. 205 (1916) (holding that when broker committed conversion by "depriv[ing] another of his property forever by deliberately disposing of it without semblance of authority" he committed intentional injury to property of another, bringing it within the discharge exception). According to the Fifth Circuit, recovery under 11 U.S.C. § 523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either: (1) an objective substantial certainty of harm; or (2) a subjective motive to cause harm. *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir.1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton*, 157 F.3d at 1029.

Thus, in the case *sub judice*, to demonstrate nondischargeability, Appellee was required to prove by a preponderance of the evidence that Appellant (1) caused an injury (2) to Appellee or his property, and (3) either (a) intended that his conduct harm Appellee, or (b) intended conduct that was substantially certain to cause harm to Appellee. The ruling of the District Court reveals that its determination to assess individual liability against Blake for the damages owed to Appellee took into account these elements.

First, conversion, which is pled in the District Court complaint, is an intentional tort under Mississippi law. *See Zumwalt*, 19 So. 3d at 688–89. The United States Supreme Court has stated in the context of the "willful and malicious" exception in 11 U.S.C. § 523(a)(6) that

the word "willful" encompasses "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury" and that "[i]ntentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.' " *Kawaauhau*, 523 U.S. at 61–62, 118 S. Ct. 974 (quoting Restatement (Second) of Torts § 8A, cmt. A). The Supreme Court has additionally stated that "[t]here is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception." *Davis*, 293 U.S. at 332, 55 S. Ct. 151. In the case *sub judice*, the District Court complaint is replete with allegations of willful and intentional conversion under Mississippi law. *See, e.g.,* Dist. Ct. Compl. [31] at 37, ¶ 17 (Blake "unlawfully converted" proceeds from sale of equipment); *id.* at 39, ¶ 23 (Blake and/or other representatives of Blake "wholly and wil[l]fully failed to deliver possession and ownership" of one piece of equipment to Appellee); *id.*, ¶ 24 (Blake "unlawfully took possession of [certain] equipment" owned by Appellee); *id.*, ¶ 25 (Appellee "demanded return of the equipment," but Blake "refused . . . and demanded payment of certain invoices that it claims is for work completed or other equipment belonging to [Appellee]"; these invoices were "fraudulent in nature"); *id.* at 40, ¶ 28 (alleging "conversion and unlawful retention of the equipment"); prayer for relief (requesting compensatory damages and "a reasonable attorney's fee and punitive damages for [Blake's] conversion").

Additionally, in entering the default judgment, the District Court considered the Appellee's evidentiary submission, including affidavits, two deposition transcripts (including one of the Appellant), various documents relating to the purchase and sale of the equipment in question, and the attorney's fee affidavit of Blake's attorney. The District Court stated in the default judgment that "[t]he evidence submitted shows that [Blake] had wrongfully come into possession of, or wrongfully detained" certain equipment; "converted" four of the five pieces of

13

equipment "in a malicious and willful manner"; and "also converted $26,000.00 of equipment sale proceeds belonging to [Appellee]." Dist. Ct. Def. J. [31] at 48–49. The District Court awarded both compensatory and punitive damages for this conduct.

This Court notes that in Mississippi punitive damages are available where "the claimant . . . prove[s] by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." *See* Miss. Code Ann. § 11-165(1)(a). "The totality of the circumstances and the aggregated conduct of the defendant must be examined before punitive damages are appropriate." *Wise v. Valley Bank*, 861 So. 2d 1029, 1034 (Miss. 2003). Punitive damages are generally allowed only "where the facts are highly unusual and cases extreme." *Id.* at 1035. The usual case for punitive damages involves either "gross negligence resulting in personal injuries or . . . some flagrant act by a wrongdoer which amount[s] to willful, malicious, or wanton conduct." *Snow Lake Shore Prop. Owners Corp. v. Smith*, 610 So. 2d 357, 362 (Miss. 1992) (citations omitted). The measure of damages in a conversion action is the value of the property at the time and place of the conversion. *West v. Combs*, 642 So. 2d 917, 921 (Miss. 1994). "Punitive or exemplary damages may be awarded for the conversion of another's property if there is evidence of acts which are willful, wrong, malicious, or oppressive." *Id.* at 921. On the other hand, "punitive damages are not available in cases of conversion where the defendant acted in good faith, but in the mistaken belief that he had authority to exercise control over the property allegedly converted." *See Walker v. Brown*, 501 So. 2d 358, 362 (Miss. 1987). Therefore, in the case *sub judice*, the District Court awarded punitive damages to Appellee based upon evidence of willful and malicious acts of conversion.

Finally, the United States Bankruptcy Court for the Northern District of Mississippi has consistently held that the doctrine of collateral estoppel applies and gives preclusive effect to compensatory and punitive damage awards when a district court has concluded that the defendant's conduct was willful and malicious. *See, e.g., In re Dickerson*, 372 B.R. 827, 834, 835 (Bankr. N.D. Miss. 2007) ("the theory of collateral estoppel is applicable to this proceeding"; "[t]he undisputed facts in this case establish that Dickerson converted the proceeds of the sales of the equipment which were subject to Deere's security interest. Therefore, under the objective 'substantial certainty of harm standard,' the injury to Deere was also willful and malicious pursuant to 11 U.S.C. § 523(a)(6)."); *In re Milton*, 355 B.R. 575, 586–87 (Bankr. N.D. Miss. 2006) ("the actions by Milton in wrongfully taking the severance package and profiting by improperly disposing of GCIS' assets to the detriment of Rain Bird's interest in the GCIS corporate stock, would, as a matter of law, constitute willful and malicious conduct consistent with the objective substantial certainty of harm standard recognized by the Fifth Circuit. Milton's participation in these transactions amounted to a wrongful conversion of assets. . . . [T]his court determines that the decision of the district court to the effect that Milton's conduct was willful and malicious should be given preclusive effect . . . ."); *In re Horowitz*, 103 B.R. 786, 789–90 (Bankr. N.D. Miss. 1989) (jury award of punitive damages "required a finding . . . that the debtor acted willfully, intentionally[,] and maliciously which is identical to the willful and malicious standard required by 11 U.S.C. § 523(a)(6)"; "federal test for the application of the doctrine of collateral estoppel has been met") (quotation marks omitted).

Based on all of the foregoing, this Court finds in this case that the Bankruptcy Court properly gave preclusive effect to the District Court's decision on the issue of "malicious and willful" conduct, because this decision determined nondischargeability. Specifically, the

Bankruptcy Court correctly determined that the District Court judgment was for the intentional tort of conversion, that as part of its judgment the District Court found that the acts were done in a "malicious and willful manner," and that the judgment renders the debt nondischargeable under 11 U.S.C. § 523(a)(6). Because "the primary debt[s are] nondischargeable due to willful and malicious conduct, the attorney's fees and interest accompanying compensatory damage[s], including post-judgment interest, are likewise nondischargeable." *Gober*, 100 F.3d at 1208; *accord In re Milton*, 355 B.R. at 586 ("there is ample authority . . . for the proposition that where wil[l]fullness and malice exist, compensatory and <u>punitive damages</u> flowing therefrom are nondischargeable under 11 U.S.C. § 523(a)(6) (quotation marks and citations omitted)). Therefore, this Court finds that the Bankruptcy Court did not err in its decision.

*D. Conclusion*

In sum, having reviewed the Bankruptcy Court's findings of facts and its conclusions of law under the appropriate standards, this Court AFFIRMS the August 25, 2014 decision of the Bankruptcy Court in all respects.

A final judgment in accordance with this opinion shall issue this day.

THIS, _3_ day of November, 2015.

_____
SENIOR U.S. DISTRICT JUDGE